UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------x

ALVIN PETERSON,                   :       **REPORT AND**
                                          **RECOMMENDATION**
                  Petitioner,     :       **TO THE HONORABLE**
                                          **WILLIAM H. PAULEY III**

         -against-                :
                                          06 Civ. 3369 (WHP)(FM)

STATE OF NEW YORK,                :

                  Respondent.     :

--------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 11/21/2008

I.    Introduction

         Pro se petitioner Alvin Peterson ("Peterson") brings this habeas corpus

proceeding, pursuant to 28 U.S.C. § 2254, to challenge his conviction, on several charges

arising out of narcotics sales, following a jury trial in Supreme Court, New York County.

On February 26, 2001, Justice Ronald A. Zweibel, before whom the case was tried,

sentenced Peterson to prison terms which, in the aggregate, amount to an indeterminate

sentence of six to twelve years.

         In his habeas petition ("Petition" or "Pet."), Peterson claims that:  (a) his

statutory right to testify before the grand jury was violated because his counsel requested

that he undergo a competency examination on the day he was scheduled to appear before

the grand jury; (b) he was denied the effective assistance of counsel by virtue of that

request; (c) Section 730.40(3) of the New York Criminal Procedure Law ("CPL"), which

permits a grand jury to deny a defendant an opportunity to be heard if he is undergoing observation, is unconstitutional; (d) he was improperly adjudicated a predicate felon; and (e) his sentence was unduly harsh and excessive.  (See Docket No. 2).  For the reasons that follow, the Petition should be denied.  Additionally, pursuant to 28 U.S.C. § 2253(c)(2), Peterson should be denied a certificate of appealability because he has failed to make the necessary showing of the denial of a constitutional right.

II.   Background

   A.   Grand Jury

      Peterson was arrested after he sold crack cocaine to an undercover police officer on July 11, 1999.  (H. 32-35; T. 74, 80).[1]  Following his arraignment later the same day, his court-appointed lawyer, Eric Scott, Esq., of The Legal Aid Society ("Mr. Scott"), filed a notice that Peterson intended to exercise his right under CPL Section 190.50(5)(a) to testify before the grand jury.  (Ex. K ¶ 3).  On the morning of July 23, 1999, when Peterson was scheduled to testify, Mr. Scott met with him to discuss the case. (Id.).  As Mr. Scott later explained, Peterson

> did not seem to understand the nature of the offense that was pending against him.  His response to the information that he was a two-time predicate felon was: "That does not mean

---

[1]      "H." refers to the transcript of the pretrial hearing.  "T." refers to the trial transcript.  "Ex." refers to the exhibits annexed to the Declaration of Assistant Attorney General Chelsea Chaffee, sworn to on February 16, 2007.  "S." refers to the transcript of Peterson's sentencing.  "Pet'r's Br." refers to Peterson's brief on appeal.  "Resp't's Br." refers to the People's brief on appeal.  "Pet'r's Reply" refers to Peterson's reply brief on appeal.  "Resp't's Mem." refers to the Respondent's memorandum of law in opposition to the Petition.

> anything." When it was disclosed to him that the grand jury
> would determine probable cause he began to laugh and said that
> he was claustrophobic. When asked what his testimony would
> be at the grand jury proceeding, he started to laugh and said
> "you will see." When Mr. Peterson was told that he was
> observed giving an apprehended buyer, King Magee, an object
> in exchange for money, he began to laugh and looked upward at
> the ceiling. Mr. Peterson th[e]n began to say that defense
> coun[sel] was actually a prosecutor connected with the office of
> Robert Morgenthau.

(Id. at ¶ 3(1)). Mr. Scott concluded that Peterson might not be competent to assist in his

defense or testify before the grand jury. (See Ex. K ¶ 3(2); Ex. L at 3). Accordingly, he

requested that the court order that Peterson be examined pursuant to CPL Section 730.40.

(Ex. L at 3). The court granted that application, adjourned the case for thirty days, and

noted that the People could "most certainly" seek an indictment in the interim. (Id. at

3-4).

B.   Motion to Dismiss the Indictment

Peterson was found to be competent after undergoing observation. (Ex. B

at 24; Ex. M ¶¶ 6, 11). By that time, however, the grand jury had already voted to indict

him, although the indictment had not yet been filed. (Ex. B at 24 & n.8; Ex. M ¶ 6). As a

consequence, Peterson moved to dismiss the indictment, pursuant to CPL Sections 190.50

and 210.20, on the ground that he was not given a "reasonable time to exercise the right

to appear as a witness before the [g]rand [j]ury, as required by statute and prevailing case

law." (Ex. K ¶ 2). Mr. Scott filed the motion, although he expressed some misgivings

about doing so because he was the person who had requested the competency

3

examination.  (See Ex. K; Pet'r's Br. at 8; Resp't's Br. at 24-25; Pet'r's Reply at 17).

Justice John Cataldo evidently denied the motion the day it was filed.  (See Pet'r's Br.

at 9).

  Thereafter, another attorney from The Legal Aid Society, Norman

Williams, Jr., Esq. ("Mr. Williams"), filed a renewed motion under CPL Sections 190.50

and 210.20 on behalf of Peterson.  (Ex. M ¶¶ 2, 8).  Mr. Williams repeated Mr. Scott's

argument that the indictment was procedurally defective.  (Id. ¶¶ 2, 8, 11).  He also

contended that the indictment should be dismissed because Mr. Scott provided ineffective

assistance by requesting a competency examination on the date of Peterson's grand jury

appearance and because a dismissal would be in the interest of justice.  (Id.  ¶¶ 20, 21).

Justice Cataldo denied this motion as well, noting, in part, that Peterson had failed to set

forth the substance of his proposed grand jury testimony.  (See Pet'r's Br. at 10).

  C.  Substitution of Counsel

  Prior to trial, yet another attorney was assigned to represent Peterson.  That

attorney, Brett D. Gilbert, Esq., does not appear to have been employed by The Legal Aid

Society.  (See H.1, T.1).

  D.  Trial

  The proof at trial would have enabled a reasonable juror to find that

Peterson sold a bag of crack cocaine to an undercover police officer on West 129th Street

in Harlem during the early morning hours of July 11, 1999.  (T. 18, 22-24, 48, 51-52).

Immediately following that sale, Peterson also sold crack cocaine to another individual, King McGee.  (Id. at 27, 53-54, 56-58, 104-05).

After the undercover purchaser transmitted Peterson's description to his back-up team, Detective Scott Carpender ("Det. Carpender")[2] arrived at the location in a van and approached Peterson.  (Id. at 28, 31, 74, 76-78).  As he did so, Peterson began to walk away and dropped a clear plastic bag containing blue objects and a piece of tissue paper.  (Id. at 78, 80).  Det. Carpender arrested Peterson and retrieved the items that he had dropped.  (Id. at 79-80).  The clear plastic bag contained sixteen small bags of crack cocaine, collectively weighing more than 500 milligrams, and there was a crack pipe inside the tissue paper.  (Id. at 80-81, 106, 112, 126-27).  The police also retrieved five dollars of prerecorded buy money from Peterson's pants pocket.  (Id. at 82, 106-08).

Despite this seemingly overwhelming evidence of his guilt, Peterson took the stand in his own defense.  He testified that on July 11, 1999, he was visiting his friend Robert Mitchell, who lived nearby.  (Id. at 130).  After leaving Mitchell's building to buy cigarettes, soda, and beer, Peterson encountered Det. Carpender who instructed him to stop, grabbed his arm, and placed him against a wall with other arrestees.  (Id. at 131-32).  Det. Carpender then walked up and down the block, returning about ten minutes later with a crack pipe that he claimed belonged to Peterson.  (Id. at 132-33).  Det. Carpender

---

[2]     The transcript of the pretrial hearing in this matter records the detective's last name as "Carpender."  (H.4).  When he testified at trial, it was transcribed as "Carpenter." (T.73).  The first spelling appears to be correct.  (See Ex. I at 4).

left again and returned with a plastic bag.  (Id. at 133).  After Det. Carpender conferred

with his fellow officers, Peterson was arrested.  (Id.).  Peterson testified that he did not

sell drugs to anyone that day, and did not possess drugs or a crack pipe.  (Id. at 134).  He

also claimed that the officers had threatened to beat him up.  (Id. at 133, 145).

E.     Verdict

On April 7, 2000, the jury found Peterson guilty of Criminal Possession of a

Controlled Substance in the Third Degree, Criminal Possession of a Controlled Substance

in the Fifth Degree, and two counts of Criminal Sale of a Controlled Substance in the

Third Degree.  (Id. at 236-39).

F.     Sentencing

On February 26, 2001, Peterson appeared before Justice Zweibel for

sentencing.  (S.1).  At the outset of the proceeding, he was asked to respond to the

People's predicate felony statement, which was based on his 1994 conviction in Supreme

Court, New York County, on one count of Attempted Criminal Sale of a Controlled

Substance in the Third Degree.  (S. 2-3).  Peterson admitted that he had been convicted of

that charge, but challenged its use on the ground that it was the subject of a habeas

proceeding then pending in this District.  (Id. at 3-6).  After reviewing the minutes of

Peterson's plea, Justice Zweibel found that Peterson was a predicate felon because there

was "no basis in [the] record to conclude that his constitutional rights were violated."  (Id.

at 9, 11-13).  The Justice then imposed concurrent sentences of two to four years'

6

imprisonment on the count charging Peterson with Criminal Possession of a Controlled Substance in the Fifth Degree, and six to twelve years' imprisonment on the three remaining counts.  (S. 24-25).

      G.    <u>Subsequent Procedural History</u>

      1.    <u>Direct Appeal</u>

On appeal, represented by new counsel, Peterson argued that:  (a) his statutory right to testify before the grand jury was violated because his case was presented to the grand jury in his absence after his counsel requested a competency examination; (b) he initially was denied the effective assistance of counsel because his own attorney had requested the competency examination and later was represented by counsel who labored under an actual conflict of interest; (c) CPL Section 730.40(3) denied him his rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment by overriding his statutory right to testify before the grand jury; (d) he was improperly designated a predicate felon; and (e) his sentence was unduly harsh and excessive.  (<u>See</u> Pet'r's Br. at i-ii).

On October 19, 2004, the Appellate Division, First Department, unanimously affirmed Peterson's judgment of conviction.  <u>People v. Peterson</u>, 784 N.Y.S.2d 29 (1st Dep't 2004).  The court held that Peterson was not improperly deprived of his right to testify before the grand jury because his attorney had come to the "reasonable conclusion" that there was a need for a psychiatric evaluation based on

7

Peterson's "bizarre and incoherent responses."  Id. at 30.  In the Appellate Division's

view, once the court ordered that examination, the People were entitled "to proceed with

the grand jury presentation without [Peterson's] testimony."  Id.  The court noted further

that Peterson "ha[d] made no showing that had he been afforded the opportunity to testify,

his testimony would have affected the outcome of the proceedings."  Id. at 31.

      The Appellate Division also rejected Peterson's ineffective assistance

claim, finding that Mr. Scott had acted in Peterson's best interests by protecting him from

giving damaging testimony at the grand jury, and that neither he nor Mr. Williams had

labored under an actual conflict of interest.  Id. at 30.

      The Appellate Division further held that Peterson's challenge to the

constitutionality of CPL Section 730.40(3), the statute that authorized the grand jury to

proceed without hearing from him, was unpreserved and declined to review it in the

interest of justice.  The court noted, however, that if it were to review the claim, it would

reject it.  Id.

      Turning to the predicate felony claim, the court concluded that Peterson had

not "sustain[ed] his burden of establishing that his prior felony conviction was

constitutionally defective."  Id. at 31.

      Finally, the court found that there was no basis for a reduction of Peterson's

sentence.  Id.

Thereafter, on January 4, 2005, Chief Judge Judith S. Kaye summarily

denied Peterson's application for leave to appeal.  People v. Peterson, 4 N.Y.3d 766

(2005).  Peterson did not petition for a writ of certiorari.

2.      Habeas Petitions Regarding the 1994 Conviction

Peterson filed two petitions in this Court attacking the 1994 conviction used

as a predicate offense in this case.  In both proceedings, Peterson argued that certain

errors had prevented the state court from honoring the prosecutor's plea agreement with

him.  Pursuant to that agreement, Peterson was to have served his time on the state

Attempted Criminal Sale of a Controlled Substance charge concurrently with his sentence

for a federal parole violation.  In 1998, Judge Robert Patterson concluded that Peterson

would have been conditionally released on the state charge at an earlier date "but for . . .

various failures by state actors."  Peterson v. Lacy, No. 97 Civ. 7795 (RPP), 1998 WL

883302, at *9 (S.D.N.Y. Dec. 17, 1998).  Accordingly, he granted Peterson's petition,

directing that he be released unless the People were able to show that he was not yet

eligible for conditional release.  Id.

at *10.

Peterson's second petition challenging his 1994 conviction also was

assigned to Judge Patterson.  Judge Patterson determined that this petition was not a

second or successive petition prohibited by 28 U.S.C. Section 2244 because the first

petition was an attack on the execution of Peterson's state court sentence while the

second petition attacked the conviction itself.  (See Peterson v. New York, No. 00 Civ.

4777, Docket No. 26 at 7).[3]  Thereafter, Magistrate Judge Kevin Fox issued a Report and

Recommendation in which he concluded that Peterson's speedy trial rights had been

violated.  (Id. at 18).  On June 30, 2005, Judge Patterson accepted Judge Fox's

recommendation that Peterson's petition be granted to the extent that it was based upon a

speedy trial delay.  (See Docket No. 33 at 2).  Judge Patterson further directed that

Peterson be released immediately.  (Id.).

3.     Resentencing

Following Judge Patterson's June 30, 2005 order, the People filed a new

statement of predicate felony conviction on February 22, 2006, based on Peterson's

conviction on an unrelated count of Criminal Sale of a Controlled Substance in the Fourth

Degree on February 5, 1985.  (Ex. G).  Thereafter, on March 9, 2006, Justice Zweibel

resentenced Peterson as a predicate felony offender based upon that conviction, imposing

the same sentence that he previously had imposed.  (Ex. H).

4.     Appeal of Newly-Imposed Sentence

By letter dated March 26, 2008, Peterson informed the Court that he was

appealing the sentence imposed after the filing of the new predicate offender statement on

the ground that it was excessive.  (See Docket No. 22).  In response, the Pro Se Office of

this Court advised Peterson that he could seek a stay so that this Court could consider his

───────────────

[3]     The order to this effect, dated May 30, 2003, was filed but is not reflected on the docket sheet.

new claim as part of this proceeding.  (See letter to Alvin Peterson, dated May 15, 2008

("Pro Se Letter") at 1).  Although Peterson did not request a stay, the Appellate Division

subsequently affirmed his sentence and the New York Court of Appeals denied his

request for leave to appeal.  See People v. Peterson, 855 N.Y.S.2d 409 (1st Dep't 2008),

leave to appeal denied, 10 N.Y.3d 938 (2008).

       The Pro Se Letter noted that Peterson could seek to amend his Petition to

incorporate this claim once it was fully exhausted.  (See Pro Se Letter at 1).  Despite the

passage of more than four months since the Court of Appeals issued its denial, Peterson

has not sought such leave.  Nevertheless, Peterson previously had raised an excessive

sentence claim as part of his original appeal.  (See Pet'r's Br. at 43-45).  In addition, his

new sentence is the same as his prior one.  For these reasons, I will address Peterson's

excessive sentence claim as part of this Report and Recommendation.  See 28 U.S.C. §

2254(b)(2) (petition may be denied on the merits despite applicant's failure to exhaust his

state court remedies).

       5.    Petition

       Peterson's Petition addressing the conviction in this case is dated March 27,

2006, and was received by the Pro Se Office on April 20, 2006.  (See Docket No. 2).  The

Petition therefore is timely.  See 28 U.S.C. § 2244(d)(1)(A) (habeas petition is subject to

one-year statute of limitations running from "the date on which the judgment becomes

final"); Valverde v. Stinson, 224 F.3d 129, 132 (2d Cir. 2000) (conviction becomes final

"when the ninety-day period to seek direct review from the United States Supreme Court by way of certiorari expire[s]").  In his Petition, Peterson reasserts each of the claims that he previously raised on direct appeal.  (See Pet. ¶ 13 (Attach.)).

III.   Discussion

A.   Procedural Default

A federal court is precluded from reviewing a claim if the state court's prior denial of the claim rested on an adequate and independent state ground.  E.g., Lee v. Kemna, 534 U.S. 362, 375 (2002); Harris v. Reed, 489 U.S. 255, 262 (1989); Wainwright v. Sykes, 433 U.S. 72, 81 (1971).  A procedural default qualifies as such an adequate and independent state ground, Harris, 489 U.S. at 262, unless the petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or . . . that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman v. Thompson, 501 U.S. 722, 750 (1991); Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996).

When a state court relies on a state procedural bar, the petitioner is precluded from seeking habeas relief even if the state court has ruled in the alternative on the merits of his federal claim.  Glenn, 98 F.3d at 724 (quoting Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990)).  In determining whether a claim may be heard, courts "apply a presumption against finding a state procedural bar and 'ask not what we think the state court actually might have intended but whether the state court plainly stated its

intention.'" <u>Galarza v. Keane</u>, 252 F.3d 630, 637 (2d Cir. 2001) (quoting <u>Jones v.</u> <u>Stinson</u>, 229 F.3d 112, 118 (2d Cir. 2001)).  Additionally, when the last court to issue a reasoned decision relies on a state procedural bar, the court will presume that subsequent decisions rejecting the claim without discussion relied on the bar and did not silently consider the merits.  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991).

Here, the Appellate Division was the last state court to issue a reasoned decision concerning Peterson's case.  In that decision, the Appellate Division unambiguously held that Peterson's challenge to the constitutionality of CPL Section 730.40(3) was unpreserved and declined to review it in the interest of justice.  <u>Peterson</u>, 784 N.Y.S.2d at 30.  The court's express reliance on Peterson's failure to preserve his claim constitutes an adequate and independent state ground for its denial.  <u>See Harris</u>, 489 U.S. at 265 n.12; <u>Glenn</u>, 98 F.3d at 724-25.

Accordingly, Peterson is barred from challenging the constitutionality of CPL Section 730.40(3) if the state rule on which the Appellate Division relied was "firmly established and regularly followed."  <u>See Cotto v. Herbert</u>, 331 F.3d 217, 239-40 (2d Cir. 2003).  New York's contemporaneous objection rule, CPL Section 470.05(2), with which Peterson failed to comply, is such a rule.  <u>See Garvey v. Duncan</u>, 485 F.3d 709, 715 (2d Cir. 2007) ("New York courts consistently interpret [CPL Section] 470.05(2) to require that a defendant specify the grounds of alleged error in sufficient detail so that the trial court may have a fair opportunity to rectify any error."); <u>People v.</u>

13

Baumann & Sons Buses, Inc., 6 N.Y.3d 404, 407-08 (2006) (requirement that a constitutional challenge be raised at the trial level "ensures that the drastic step of striking duly enacted legislation will be taken . . . only after the lower courts have had an opportunity to address the issue"); Red Hook/Gowanus Chamber of Commerce v. N.Y.C. Bd. of Standards & Appeals, 5 N.Y.3d 452, 460 n.3 (2005) (declining to address constitutional claim not raised before the trial court); People v. Riddick, 823 N.Y.S.2d 594, 596 (3d Dep't 2006) (defendant's challenge to the constitutionality of a murder statute unpreserved for failure to raise it in the lower court); People v. Packer, 817 N.Y.S.2d 829, 831 (4th Dep't 2006) (same).

For this Court to consider Peterson's procedurally-defaulted constitutional challenge to CPL Section 730.40(3), Peterson would have to demonstrate either cause for his default and actual prejudice or that the failure to consider his claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. To establish cause for a default, a petitioner must adduce "some objective factor external to the defense" which explains why he did not raise the claim previously. Murray v. Carrier, 477 U.S. 478, 488 (1986); Gonzalez v. Sullivan, 934 F.2d 419, 422 (2d Cir. 1991). Among the circumstances giving rise to cause are: (1) situations in which the factual or legal basis for a claim was not reasonably known by counsel, (2) interference by government officials which makes compliance impracticable, and (3) ineffective assistance of counsel. Murray, 477 U.S. at 488; Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994).

A showing of prejudice requires more than the possibility of prejudice; the errors at trial must have "worked to [the petitioner's] <u>actual</u> and substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions." <u>Femia v. United States</u>, 47 F.3d 519, 524 (2d Cir. 1995) (quoting <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982)).  In short, the petitioner must demonstrate that the failure to raise the claim previously had a substantial injurious effect on the petitioner's case such that he was denied fundamental fairness.  <u>Reyes v. New York</u>, No. 99 Civ. 3628 (SAS), 1999 WL 1059961, at *2 (S.D.N.Y. Nov. 22, 1999).

Finally, to establish a fundamental miscarriage of justice, a petitioner must demonstrate that he is "actually innocent." <u>Aparicio v. Artuz</u>, 269 F.3d 78, 90 (2d Cir. 2001).

In his Petition, Peterson argues that his trial counsel was ineffective. (Pet. ¶ 13(Attach.)).  While ineffective assistance could constitute cause for a procedural default, Peterson's ineffectiveness claim arises out of Mr. Scott's request for the competency examination.  (<u>See</u> Pet'r's Br. at 24-31; Pet'r's Reply at 11-20).  Peterson does not allege that Mr. Scott was ineffective because he failed to challenge the constitutionality of CPL Section 730.40(3), nor does he contend that he is actually innocent.  It follows that Peterson cannot overcome his procedural default with respect to his attack on the constitutionality of CPL Section 730.40(3).  In any event, even if that claim could be reviewed, it would lack merit.  (<u>See</u> <u>infra</u> Section III.B.2).

15

B.    Merits

1.    Standard of Review

A habeas corpus petition is not a vehicle to relitigate every issue previously determined in state court.  Herrera v. Collins, 506 U.S. 390, 401 (1993).  Instead, a state prisoner seeking habeas relief under Section 2254 must show by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The petitioner thus has the burden of proving, by a preponderance of the evidence, that his rights have been violated.  See Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997).

Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides, in part, that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d)(1) (emphasis added).

As the Second Circuit noted in Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000), the Supreme Court has "construed the amended statute so as to give independent meaning to 'contrary [to]' and 'unreasonable.'"  Under the "contrary to" clause, "a federal

16

habeas court may grant the writ if the state court arrives at a conclusion opposite to that

reached by [the Supreme] Court on a question of law or if the state court decides a case

differently than [the] Court has on a set of materially indistinguishable facts." Williams

v. Taylor, 529 U.S. 362, 412-13 (2000).  Under the "unreasonable application" clause, a

federal habeas court should "ask whether the state court's application of clearly

established federal law was objectively unreasonable." Id. at 409.  This standard does not

require that reasonable jurists all would agree that the state court was wrong.  Id.

at 409-10.  Rather, the standard "falls somewhere between 'merely erroneous and

unreasonable to all reasonable jurists.'" Stinson, 229 F.3d at 119 (quoting Francis S. v.

Stone, 221 F.3d 100, 109 (2d Cir. 2000)).

       Section 2254(d)(2) also authorizes the federal courts to grant a habeas writ

when a claim considered on the merits in state court "resulted in a decision that was based

on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."

       Finally, to the extent that a habeas petition challenges factual findings, "a

determination of a factual issue by a State court shall be presumed to be correct" and

"[t]he [petitioner] shall have the burden of rebutting the presumption of correctness by

clear and convincing evidence."   28 U.S.C. § 2254(e)(1).

"If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail."  <u>Williams</u>, 529 U.S. at 389.

2.      <u>Right to Testify at Grand Jury</u>

Peterson's first claim is that he was improperly deprived of his right to testify before the grand jury because on the morning he was scheduled to appear, his attorney requested (and the court ordered) that he undergo a competency examination. (Pet'r's Br. at 14; Pet's Reply at 1).  This claim fails for at least two reasons.  First, the Supreme Court "has never held that federal concepts of a 'grand jury,' binding on the federal courts under the Fifth Amendment, are obligatory for the States."  <u>Alexander v. Louisiana</u>, 405 U.S. 625, 633 (1972) (citing <u>Hurtado v. California</u>, 110 U.S. 516, 538 (1884)).  Accordingly, even if Peterson were able to show that there was some irregularity in the state grand jury proceedings, he would not have a federal constitutional claim.  <u>See People v. Smith</u>, 87 N.Y.2d 715, 719 (1996).

Second, because Peterson was convicted after a jury trial at which he testified, any error in the grand jury proceedings was harmless beyond a reasonable doubt. In <u>United States v. Mechanik</u>, 475 U.S. 66, 67-68 (1986), the United States Supreme Court reached that conclusion in the context of a federal criminal case.  There, the defendants first learned during their trial that two law enforcement witnesses had appeared before the grand jury at the same time, which arguably constituted a violation of

Rule 6(d) of the Federal Rules of Criminal Procedure.  The Supreme Court assumed that this violation would have justified the dismissal of portions of the indictment had it resulted in prejudice and been called to the trial judge's attention before the commencement of the trial.  Id. at 69-70.  Nonetheless, the Court held that "the petit jury's verdict rendered harmless any conceivable error in the charging decision that might have flowed from the violation."  Id. at 73.  The Court further observed that "the societal costs of retrial after a jury verdict of guilty are far too substantial to justify setting aside the verdict simply because of an error in the earlier grand jury proceedings."  Id.

Thereafter, in Lopez v. Riley, 865 F.2d 30 (2d Cir. 1989), the Second Circuit considered whether a violation of a defendant's state grand jury procedural rights could be a basis for habeas relief.  The court concluded that "the reasoning of Mechanik clearly applies."  Id. at 32.  As the court explained, "[i]f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are a fortiori foreclosed in a collateral attack brought in a federal court."  Id.

In this case, as noted above, Peterson testified as a defense witness at his trial.  Because the petit jury ultimately returned a guilty verdict, the specific procedural defect at the grand jury stage that he cites as a basis for setting aside his conviction was cured.  Peterson consequently is not entitled to habeas relief based on his failure to testify before the grand jury.

3.     Ineffective Assistance of Counsel

Peterson claims that he was deprived of the effective assistance of counsel because (a) Mr. Scott's request that Peterson undergo a competency examination was unreasonable and deprived him of an important right, and (b) Messrs. Scott and Williams both operated under an actual conflict of interest after that request was made.  (Pet'r's Br. at 24-31; Pet'r's Reply at 11-20).  Neither contention withstands scrutiny.

a.     Applicable Standard

In order to prevail on an ineffective assistance of counsel claim, Peterson must show that (i) his counsel's performance "fell below an objective standard of reasonableness," and (ii) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).  Under Strickland, there is a "strong presumption that [a lawyer's] conduct falls within the wide range of reasonable professional assistance."  Id. at 689.  As the Second Circuit has noted, "[t]he Strickland standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard."  Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001).

b.     Reasonableness of Decision

When Mr. Scott met with Peterson on the morning of the proposed grand jury testimony, Peterson's behavior was unquestionably odd.  For example, after Mr. Scott noted that the grand jury would decide whether there was probable cause to believe

that a crime had been committed, Peterson responded by laughing and saying he was claustrophobic.  When Mr. Scott asked what his testimony would be, Peterson said simply, "you will see."  Additionally, when Mr. Scott pointed out that Peterson had been observed engaging in a drug transaction with King McGee, Peterson laughed and looked up at the ceiling.  Peterson also indicated that he thought Mr. Scott was a prosecutor affiliated with the office of the New York County District Attorney.  (See Ex. K ¶2(1)).  Based on these exchanges with his client, Mr. Scott made his successful application to have a psychiatric examination conducted.  (See Ex. L).

As Magistrate Judge Eaton has noted, "[p]rosecutors welcome an opportunity to cross-examine a defendant before providing discovery."  Verdel v. Miller, 05 Civ. 1997 (DAB) (DFE), 2008 WL 463777, at *8 (S.D.N.Y. Feb. 19, 2008).  Here, given Peterson's behavior, Mr. Scott had even more reason than usual to be concerned that Peterson might prejudice his case by testifying before the grand jury.  It therefore was reasonable for him to forfeit the opportunity to have his client appear before the grand jury.  Moreover, even if the wisdom of Mr. Scott's tactical decision to seek a psychiatric evaluation rather than permitting Peterson to testify before the grand jury were not entirely free from doubt, the choice that he made must be presumed to be correct.  Strickland, 466 U.S. at 689.  In his papers, Peterson has not set forth any facts which suffice to overcome that "strong" presumption.  There consequently is no basis for his claim that Mr. Scott provided ineffective assistance by failing to ensure that he was able to testify before the grand jury before it voted on the charges proposed by the prosecutor.

21

Indeed, it is settled law that a defense attorney may waive a client's right to testify before the grand jury without consulting the client.  See Williams v. Ricks, No. 02 Civ. 2131 (RCC)(RLE), 2004 WL 1886028, at *7 (S.D.N.Y. Aug. 24, 2004) (collecting cases).

c.    Prejudice

Additionally, to prevail on an ineffective assistance claim, a petitioner must establish prejudice.  In this case, Peterson is unable to do so for two reasons.  First, as a matter of law, his subsequent conviction by a trial jury rendered harmless any errors that might have occurred before the grand jury.  Mechanik, 475 U.S. at 73.  Second, at his trial, Peterson testified as a defense witness and had an unfettered opportunity to present his version of the events leading to his arrest and prosecution.  The verdict of guilty that the jury returned on all four counts presented for its consideration establishes that the jurors found Peterson's testimony incredible.  Having failed to persuade the trial jury that his testimony was truthful, Peterson plainly cannot show that the grand jury – which was only asked to make a probable cause finding – would have reached a different conclusion. Peterson therefore has not satisfied the second prong of the Strickland test with respect to his claim that Mr. Scott was ineffective.

Peterson also argues that Messrs. Scott and Williams labored under an actual conflict of interest when they continued their representation of him despite Mr. Scott's failure to have him testify before the grand jury.  (Pet'r's Br. at 29-31).  When an actual conflict of interest exists, prejudice is presumed.  Eisemann v. Herbert, 401 F.3d 102, 107 (2d Cir. 2005).  Such an actual conflict arises when an attorney's personal

22

interests diverge from those of his client "with respect to a material factual or legal issue or to a course of action."  LoCascio v. United States, 395 F.3d 51, 56 (2d Cir. 2005) (quoting Winkler v. Keane, 7 F.3d 304, 307 (2d Cir. 1993)).  This requires a petitioner to show both that there was a "plausible alternative defense strategy [which was] not taken up by counsel" and that counsel's decision not to pursue the alternative strategy was due to a conflict.  Id. at 56-57 (internal citations omitted).

Peterson contends that Mr. Scott labored under an actual conflict of interest because he did not fully represent Peterson's interests at his arraignment on the indictment.  (Pet'r's Br. at 29-31).  According to Peterson, despite having received the psychiatrists' reports finding Peterson competent, Mr. Scott "proceeded into a long explanation to defend his decision to request the examination," rather than unequivocally arguing for Peterson's right to testify.  (Id. at 29).  Peterson asserts that Mr. Scott's "unabashed defense of his own conduct," which was repeated in the motion under CPL Section 190.50 that he filed on Peterson's behalf, makes clear that Mr. Scott did not possess the requisite single-minded devotion to Peterson's interests that the law requires. (Id. at 30-31).

Contrary to Peterson's assertion, Mr. Scott did not labor under an actual conflict of interest.  Although his decision to request a competency examination prevented Peterson from appearing before the grand jury prior to the return of an indictment, it is clear that his request was prompted by genuine concern for his client.  Moreover, his subsequent conduct did not reflect any interest different than Peterson's.

23

Indeed, after two psychiatrists found Peterson competent, Mr. Scott did not attempt to challenge their reports.  (See Pet'r's Br. at 29; Resp't's Br. at 24).  Instead, he moved to dismiss the indictment so that Peterson could appear before the grand jury before it voted with respect to the proposed charges against him.  (Ex. K).  Although that motion ultimately was denied, it was not because an actual conflict affected Mr. Scott's ability to argue in favor of it, but because the motion lacked merit.  Peterson therefore has not shown that Mr. Scott's request for a competency examination and subsequent defense of that decision put him in a position adverse to his client, much less that he had an actual conflict of interest.  Cf. LoCascio, 395 F.3d at 57 (co-defendant's threat to harm his lawyer unless he sacrificed other defendant's interests creates an actual conflict); United States v. Williams, 372 F.3d 96, 105 (2d Cir. 2004) (actual conflict because attorney engaged in illegal firearms enterprise with client whom he was defending on similar charges); United States v. Fulton, 5 F.3d 605, 610-11 (2d Cir. 1993) (allegation that defense counsel engaged in heroin trafficking related to the charge for which his client was on trial created an actual conflict).

        In any event, even if Mr. Scott had an actual conflict, the resulting presumption of prejudice is rebuttable.  Cuyler v. Sullivan, 446 U.S. 335, 353-54 (1980).  Here, Peterson has not shown that it prevented Mr. Scott from pursuing a plausible defense strategy.  Indeed, Peterson's only complaint is that Mr. Scott improperly devoted time and space to "defend[ing] his decision to request the examination" in his motion to dismiss the indictment.  (Pet'r's Br. at 29; Pet'r's Reply at 18).  Although Mr. Scott did

explain his reasons for requesting the examination, (see Ex. K ¶ 3(2)), he also argued forcefully that the indictment should be dismissed because Peterson was denied the right to testify before the grand jury.  (Id.).  It follows that Peterson has not established conduct so severe as to give rise to an actual conflict.  See, e.g., United States v. Rahman, 189 F.3d 88, 144 (2d Cir. 1999) (attorney's candid response to client's accusations does not warrant disqualification absent a "complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict.") (quoting McKee v. Harris, 649 F.2d 927, 931 (2d Cir. 1981)).

Turning to Mr. Williams, Peterson contends that he had an actual conflict because he was representing Peterson at the same time that he was accusing another attorney from The Legal Aid Society of "prejudicial incompetence and ineffectiveness." (Pet'r's Br. at 31).  Although Mr. Williams and Mr. Scott were employed by the same entity, this did not cause Mr. Williams to shy away from arguing that Mr. Scott was ineffective.  Indeed, in his motion to dismiss the indictment, Mr. Williams characterized Mr. Scott as an "ineffective" advocate whose representation was not "meaningful" and whose decisions were without "sufficient basis."  (Ex. M ¶¶ 19-22). Given these strong words, Peterson is unable to show that any purported conflict on the part of Mr. Scott had an adverse affect on Mr. Williams' performance.  See Mickens v. Taylor, 535 U.S. 162, 171 (2002) ("[A]n actual conflict of interest mean[s] precisely a conflict that affected counsel's performance – as opposed to a mere theoretical division of loyalties.") (internal quotation marks omitted).

The fact that Peterson's first two attorneys both were from The Legal Aid Society does not require a different result. The Legal Aid Society is the primary provider of criminal defense services to indigent clients in state courts in New York City. (See Legal Aid Society, http://www.legal-aid.org/en/whatwedo/criminalpractice.aspx (last visited Nov. 7, 2008)). As judges in this District have recognized, the frequent turnover and heavy caseloads at large public defender organizations such as The Legal Aid Society reduce the likelihood that client confidences will be shared among attorneys. See United States v. Reynoso, 6 F. Supp. 2d 269, 272 (S.D.N.Y. 1998); United States v. Lech, 895 F. Supp. 586, 591 (S.D.N.Y. 1995). In addition, Mr. Scott and Mr. Williams both advocated for Peterson even though part of that advocacy involved an attack by Mr. Williams on the effectiveness of Mr. Scott's representation. This case consequently is different from those in which attorneys at a single entity undertake multiple client representations under circumstances which generate actual conflicts of interest. See, e.g., Hempstead Video, Inc. v. Inc. Vill. of Valley Stream, 409 F.3d 127, 133 (2d Cir. 2005) (attorney's conflicts may be imputed to the firm where the conflict involves concurrent or successive representation of clients with divergent interests); United States v. Stein, 410 F. Supp. 2d 316, 326 (S.D.N.Y. 2006) (attorney's conflict imputed to firm that represented current clients accused of tax fraud as well as former client expected to be a government witness at trial).

In sum, neither Mr. Scott nor Mr. Williams had an actual conflict of interest. Furthermore, even if they did, Peterson was represented during the pretrial

26

hearings and at trial by yet another attorney, Brett Gilbert, Esq., who is not affiliated with The Legal Aid Society.  (See H.1, T.1).  Accordingly, even if Messrs. Scott or Williams (or The Legal Aid Society) had an actual conflict, it clearly did not prejudice Peterson since he was convicted after a jury trial at which he was represented by an attorney who had no actual or potential conflict.

        4.    Constitutionality of CPL Section 730.40(3)

        Peterson also challenges the constitutionality of CPL Section 730.40(3).  As noted above, this claim is procedurally barred.  However, even if the Court were to address the merits of the claim, Peterson would not be entitled to habeas relief.

        CPL Section 730.30(1) provides that a court must issue an order of examination "when it is of the opinion that the defendant may be [a mentally] incapacitated person."  CPL Section 730.40(3), which Peterson challenges in this proceeding, in turn deals with the potential temporal conflict between a defendant's statutory right to testify before the grand jury and the need to determine his fitness to do so.  The statute states that "[w]hen a local criminal court has issued an order of examination . . . and when the charge or charges contained in the accusatory instrument are subsequently presented to a grand jury, such grand jury need not hear the defendant pursuant to [CPL S]ection 190.50" (which would ordinarily allow the defendant to testify if he wished to do so).  CPL § 730.40(3).

        The Fifth Amendment to the United States Constitution requires that absent a waiver felony charges in federal cases be brought pursuant to a grand jury

presentment or indictment.  See U.S. Const. Amend. V; see also Smith v. United States, 360 U.S. 1, 6-7 (1959) (indictment may be waived).  Nevertheless, the United States Constitution does not afford a defendant in a federal case the right to testify before the grand jury.  United States v. Williams, 504 U.S. 36, 52 (1992); United States v. Ruiz, 894 F.2d 501, 505 (2d Cir. 1990); United States v. Ciambrone, 601 F.2d 616, 622-23 (2d Cir. 1979).  If a federal defendant has no constitutional right to testify before a grand jury, a state defendant such as Peterson – who does not have a constitutional right to have the charges against him brought by a grand jury – cannot seriously claim a constitutional right to testify before the grand jury.

That said, CPL Section 190.50(5) does afford a defendant in a state criminal case a statutory right to testify before a grand jury.  See Edwards v. Mazzuca, No. 00 Civ. 2290 (RJS)(KNF), 2007 WL 2994449, at *13 (S.D.N.Y. Oct. 15, 2007).  The statute provides that "[w]hen a criminal charge against a person is being or . . . has been submitted to a grand jury, such person has a right to appear before such grand jury as a witness in his own behalf."  CPL § 190.50(5)(a).  A state-created statutory right "cannot be forfeited in an arbitrary or fundamentally unfair manner" and the procedures applicable to it "must comport with the Due Process and Equal Protection clauses." Chandler v. Moscicki, 253 F. Supp. 2d 478, 489-90 (W.D.N.Y. 2003) (citing Evitts v. Lucey, 469 U.S. 387, 393 (1985)).  I therefore will consider whether the procedures followed in this case violated Peterson's rights under either the Due Process or Equal Protection Clauses of the Fourteenth Amendment.

28

a.   <u>Due Process</u>

By incorporating his brief on appeal into his Petition, Peterson challenges the constitutionality of CPL Section 730.40(3) on both procedural and substantive due process grounds.  (Pet'r's Br. at 32-39).

i.   <u>Procedural Due Process</u>

Pursuant to the Due Process Clause of the Fourteenth Amendment, a state may not deprive a person of liberty or property "without due process of law."  U.S. Const. Amend. XIV.  In order to establish a procedural due process violation, a plaintiff therefore first must show that he was deprived of a liberty or property interest.  <u>See</u> <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 571 (1972); <u>Finley v. Giacobbe</u>, 79 F.3d 1285, 1296 (2d Cir. 1996).  If such a deprivation occurred, the Court then must consider what process was due and whether it was provided.  <u>See</u> <u>Matthews v. Eldridge</u>, 424 U.S. 319, 333-35 (1976).  There are no hard and fast rules in this area.  <u>Id.</u> at 334 (citing <u>Cafeteria Workers v. McElroy</u>, 367 U.S. 886, 895 (1961)).  Instead, the concept of procedural due process is "flexible and calls for such procedural protections as the particular situation demands." <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972).

Assuming that CPL Section 190.50 gives a criminal defendant a liberty or property interest in appearing before the grand jury, New York law sets out the procedures that must be followed before that interest can be denied.  The starting point is CPL Section 730.30, which provides that a court "must issue an order of examination when it is of the opinion that the defendant may be an incapacitated person."  CPL

§ 730.30(1).  An "incapacitated person," in turn, is defined as "a defendant who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense."  Id. § 730.10(1).  Two qualified psychiatric examiners must conduct the examination of a defendant whose mental state is questioned to determine if he is "incapacitated."  Id. § 730.20(1).  In this case, because Peterson was in custody after his arrest, the psychiatric examiners were required to examine him at the facility where he was held and to render their reports promptly.  See id. §§ 730.20(3),(5).  Each of these statutory requirements was met.  (See Pet'r's Br. at 6-7).

Peterson's principal complaint is that he allegedly was indicted after the psychiatric examiners found him competent without being afforded an opportunity to testify before the grand jury.  (See id. at 8).  The People's brief submitted to the Appellate Division represented that the grand jury voted to indict Peterson before the psychiatrists' reports were received although the indictment was returned at a later date.  (See Resp't's Br. at 27 n.10).  However, even if the reports were available to the People and defense counsel before the grand jury vote was taken, this does not mean that the procedures followed in this case deprived Peterson of due process.  Indeed, CPL Section 730.40(3) afforded Peterson an express remedy.  Pursuant to that statute, a grand jury need not hear from a defendant who has expressed a desire to testify before it "unless, upon application by [the] defendant to the superior court that impaneled such grand jury, the superior court determines that the defendant is not an incapacitated person."  CPL § 730.40(3).  Peterson therefore could have asked the judge who impaneled the grand jury to permit him to

30

testify even though an indictment had been returned.  The mere fact that he and his

counsel failed to file such an application does not suggest that the <u>statute</u> lacks adequate

procedural safeguards for a defendant who is adjudged mentally competent and then

renews his request to testify before the grand jury that is considering whether to return a

true bill against him.  See People v. Fox, 669 N.Y.S.2d 470, 476 (County Ct. Nassau

1997) ("This procedural safeguard, allowing defendant to make an application to the

court before the grand jury presentation is concluded, protects individuals from

improperly being denied the right to testify because of an erroneous assumption that

defendant is incompetent."); People v. Baxley, 531 N.Y.S.2d 491, 494 (Sup. Ct. Queens

County 1988) (statutory right to testify before grand jury not violated where "defendant

failed to avail himself of the procedures available under CPL [Section] 730.40(3).").[4]

ii.    <u>Substantive Due Process</u>

Turning to substantive due process, "it is settled that the due process clause

of the Fourteenth Amendment applies to matters of substantive law as well as to matters

of procedure.  Thus all fundamental rights comprised within the term liberty are protected

by the Federal Constitution from invasion by the States."  <u>Planned Parenthood of Se. Pa.

v. Casey</u>, 505 U.S. 833, 846-47 (1992) (quoting <u>Whitney v. California</u>, 274 U.S. 357, 373

---

[4]    Peterson seeks to distinguish Fox on the ground that the defendant in that case
was ultimately found to be incompetent while he was not.  (See Pet'r's Br. at 37 n.8; Pet'r's
Reply at 22 n.17).  The court's analysis, however, did not turn on the ultimate outcome of the
examination.  Rather, the court recognized that, "[i]f found competent . . . , the defendant will
then be afforded the opportunity to testify before such grand jury."  See <u>Fox</u>, 669 N.Y.S.2d at
476.

(1927) (Brandeis, J., concurring)).  These fundamental rights include ones expressly identified in the Bill of Rights and others implicitly guaranteed by the Constitution.  See id. at 847; San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 31, 33 (1973); Disabled Am. Veterans v. U.S. Dep't of Veterans Affairs, 962 F.2d 136, 141 (2d Cir. 1992).  Although the reach of substantive due process is subject to change, see Casey, 505 U.S. at 847-48, and may be somewhat difficult to pinpoint at any particular time, see Gonzalez v. United States, 128 S.Ct. 1765, 1774 (2008) (Scalia, J., concurring), the United States Constitution does not grant any defendant an express right to testify before a grand jury.  See Williams, 504 U.S. at 52; Ruiz, 894 F.2d at 505.  Nor has the Supreme Court concluded that the right to testify before a grand jury is so important that it is implicitly part of our Constitution, like the right to privacy, see Roe v. Wade, 410 U.S. 113, 152-53 (1973), the right to vote, see Bush v. Gore, 531 U.S. 98, 104-05 (2000), and the right to travel between or among states, see Shapiro v. Thompson, 394 U.S. 618, 630-31 (1969) (overruled in part on other grounds by Edelman v. Jordan, 415 U.S. 651 (1974)).  Accordingly, although a defendant's statutory right to testify before a grand jury is undoubtedly an important one, see People v. Smith, 87 N.Y.2d 715, 720-21 (1996); People v. Evans, 79 N.Y.2d 407, 413-14 (1992); People v. Corrigan, 80 N.Y.2d 326, 332 (1992), it does not rise to the level of a "fundamental" right.  See Fox, 669 N.Y.S.2d at 474 (citing Rodriguez, 411 U.S. at 31).  It follows that a statute depriving a defendant of that statutory right does not violate substantive due process.  Id. at 475.

b.    Equal Protection

Peterson also claims that CPL Section 730.40(3) deprived him of his constitutional right to equal protection of the law.  (See Pet'r's Br. at 39-40; Pet'r's Reply at 20-22).  Statutes challenged on equal protection grounds ordinarily are subject to one of two levels of scrutiny:  rational basis review (the standard most deferential to state legislatures) or strict scrutiny (the most exacting standard).  See Ramos v. Town of Vernon, 353 F.3d 171, 174-75 (2d Cir. 2003).  Under rational basis review, a statute will be upheld if the distinction created is rationally related to a legitimate government interest.  Bd. of Trs. of Univ. of Al. v. Garrett, 531 U.S. 356, 367 (2001).  Strict scrutiny applies when the statute in question interferes with a "fundamental right" or affects a "suspect class."  Ramos, 353 F.3d at 175; Fox, 669 N.Y.S.2d at 473.  Under the strict scrutiny test, a statute will be upheld only if it is narrowly tailored to achieve a compelling government interest.  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985).

As noted above, the right to testify before a grand jury is not a fundamental right.  Moreover, the federal courts have refused to designate the mentally incompetent as a suspect class.  See Garrett, 531 U.S. at 366; Cleburne, 473 U.S. at 442, 445-46; Fetterusso v. New York, 898 F.2d 322, 325 (2d Cir. 1990) (persons committed after being found not responsible by reason of mental disease are not generally part of a suspect class); Fox, 669 N.Y.S.2d at 473-74 (collecting cases).  Peterson's equal protection claim therefore is not subject to strict scrutiny.

33

There also are limited instances in which the Supreme Court has designated a classification as "quasi-suspect" and required a level of scrutiny falling somewhere between rational basis review and strict scrutiny.  See Cleburne, 473 U.S. at 440-41; Ramos, 353 F.3d at 175 (citing Clark v. Jeter, 486 U.S. 456, 461 (1988)).  In such "intermediate scrutiny" cases, a statute is upheld if it bears a substantial relationship to an important government interest.  Cleburne, 473 U.S. at 441.

Individuals belong to "quasi-suspect" classes if they have been the victims of discrimination based on a characteristic beyond their control which bears "no relation to [their] ability to participate in and contribute to society."  Cleburne, 473 U.S. at 440-41 (internal quotation marks omitted).  The Supreme Court has expressly held, however, that cases involving mental illness and retardation do not involve quasi-suspect classes and, consequently, do not warrant anything more onerous than rational basis review.  Heller v. Doe, 509 U.S. 312, 321 (1993); Cleburne, 473 U.S. at 442, 445-46.  To defeat Peterson's equal protection claim, the respondent therefore need only show that CPL Section 730.40(3) is rationally related to a legitimate government interest.  Garrett, 531 U.S. at 367.

It is, of course, understandable that a defendant who has a colorable defense might seek to avoid indictment by testifying before the grand jury.  By the same token, however, the State plainly has an interest in protecting such persons from appearing before a grand jury if there is reason to believe that they may not fully understand the nature and significance of the proceedings due to their mental incompetency.  The State

34

also has a legitimate interest in assuring that criminal cases proceed without undue delay. See, e.g., CPL §§ 30.20(1) ("After a criminal action is commenced, the defendant is entitled to a speedy trial."); 30.30(1)(a),(2)(a) (defendant must be released from custody and case must be dismissed if the People fail to meet required deadlines); People v. White, 32 N.Y.2d 393, 397 (1973) (statutory speedy trial right is "violated if there is an excessive delay between the institution of the prosecution – whether by felony information or complaint, detainer warrant or indictment – and the trial."). CPL Section 730.40(3) seeks to accommodate these competing interests by permitting a grand jury to return an indictment while a defendant is undergoing a competency examination, unless the state court that impaneled the grand jury orders otherwise upon application by the defendant.

Accordingly, if Peterson had made a timely application, the state court would have had the discretion to permit him to testify before any indictment was returned. Although Peterson failed to make such an application, the statutory requirement that a defendant seek affirmative relief from the state court before being permitted to delay a grand jury's deliberations clearly is not irrational. Rather, it ensures that such delays will not occur unless there is a serious prospect that the defendant, if found to be competent, will exercise his right to testify before the grand jury that is considering whether charges should be brought. The statute also ensures that a neutral arbitrator – the judge overseeing the grand jury – will determine whether the delay is warranted in a particular case. The state's decision to balance its interest in proceeding expeditiously with criminal

35

cases against the rights of defendants in this manner is rational.  CPL Section 730.40(3)

therefore does not violate the Equal Protection Clause.  See Mass. Bd. of Ret. v. Murgia,

427 U.S. 307, 314 (1976) (per curiam) (legislation subject to rational basis review is

presumed valid).  Peterson therefore cannot prevail on his equal protection claim.

5.    Predicate Felon Status

Peterson next claims that he was improperly designated a predicate felon

because the constitutionality of his 1994 conviction on one count of Attempted Criminal

Sale of a Controlled Substance in the Third Degree was still sub judice at the time of his

initial sentencing.  Peterson bases this claim on the fact that the second habeas petition

attacking his 1994 conviction had not yet been decided by this Court.  (Pet'r's Br. at 41;

Pet'r's Reply at 23).

Whatever the merits of that claim may be, it is undisputed that Peterson was

resentenced after Judge Patterson granted his second habeas petition on June 30, 2005.

(See Ex. N).  Prior to that sentencing, the People filed a new statement of predicate felony

conviction based on a 1985 conviction of Peterson on a charge of Criminal Sale of a

Controlled Substance in the Third Degree.  (See Ex. G).  Justice Zweibel then reimposed

the sentence he previously had imposed.  (Ex. H).

As a consequence, the sentence that Peterson currently is serving is in no

way dependent on his 1994 conviction.  Moreover, in his papers, Peterson does not

challenge the use of his 1985 conviction as a predicate felony.  It follows that any claim

that he might have had with respect to his original sentence has been rendered moot by

36

his resentencing.  See Lin v. Filion, No. 02 Civ. 2878 (VM), 2004 WL 911777, at *10

(S.D.N.Y. Mar. 19, 2004) (Report and Rec. of Dolinger, Mag. J.) (sentencing claim

mooted by Appellate Division decision upholding petitioner's objection and ordering a

resentencing); accord Johnson v. Filion, No. 05 Civ. 443 (GWG), 2005 WL 3086661, at

*3 (S.D.N.Y. Nov. 18, 2005); see also Village of Ilion v. Fed. Energy Regulatory

Comm'n, 790 F.2d 212, 217 (2d Cir. 1986) (claim becomes moot when "intervening

events or judicial decisions have granted the relief sought, or rendered it irrelevant").

In sum, Peterson has failed to demonstrate any violation of his

constitutional rights based upon Justice Zweibel's determination that he is a predicate

felony offender by virtue of his 1985 conviction.

6.    Sentence

Peterson's final claim is that his six-to-twelve year sentence was unduly

harsh and excessive in light of such mitigating factors as his "minimal prior record" and

"poor physical health."  (Pet'r's Br. at 43-45; Pet'r's Reply at 25-27).  However, "[n]o

federal constitutional issue is presented" when a petitioner's sentence is within the range

prescribed by state law.  White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992).

Peterson was convicted of two counts of Criminal Sale of a Controlled

Substance in the Third Degree, one count of Criminal Possession of a Controlled

Substance in the Third Degree, and one count of Criminal Possession of a Controlled

Substance in the Fifth Degree.  The first three charges are Class B felonies.  N.Y. Penal

Law §§ 220.16, 220.39.  The remaining possession charge is a class D felony.  Id.

37

§ 220.06.  As a second felony offender, Peterson therefore faced a maximum sentence of nine to twenty-five years on each of the first three counts and a maximum sentence of four to seven years on the fourth count.  Id. §§ 70.06(3)(b),(d).  Additionally, the court was required to impose a minimum term of one-half the maximum term imposed.  Id. § 4(b).  Finally, because both of the sales and Peterson's subsequent possession of crack cocaine constituted separate acts, the court could have sentenced Peterson to three consecutive sentences.  Id. § 70.25; People v. Farga, 580 N.Y.S.2d 20, 21 (1st Dep't 1992); People v. Carter, 513 N.Y.S.2d 331, 337 (Sup. Ct. Kings County 1987).

The New York statutory scheme therefore authorized Justice Zweibel to impose a lengthy sentence on Peterson.  As the Justice noted, Peterson had a "very extensive criminal record going back to 1980." (S. 23).  The jury's verdict also constituted a finding that Peterson perjured himself while testifying at the trial.  In light of his criminal history and false testimony, Peterson can scarcely complain about his sentence, which, in the aggregate, amounted to a sentence of six to twelve years and was at the low end of the permissible range for even a single drug sale.

In any event, even if the sentence could be viewed as harsh, it clearly was within the statutory range, and therefore presents no constitutional issue that might entitle Peterson to habeas relief.

IV.    Conclusion

For the foregoing reasons, Peterson's petition should be denied.  Furthermore, because Peterson has not made the substantial showing of the denial of a

constitutional right required by 28 U.S.C. § 2253(c)(2), a certificate of appealability

should not be issued.[5]

V.      Notice of Procedure for Filing of Objections to this Report and Recommendation

         The parties shall have ten days from the service of this Report and

Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule

72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a),(d).  Any

such objections shall be filed with the Clerk of the Court, with courtesy copies delivered

to the chambers of the Honorable William H. Pauley III, and to my chambers at the

United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any

opposing parties.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any

---

[5]      Since the filing of the Petition, Peterson has raised one additional claim in state court which merits brief discussion.  In May 2008, Peterson filed a CPL Section 440.10 motion seeking to vacate the judgment of conviction in this case on the theory that he was improperly cross-examined at trial about his 1994 conviction.  (See Aff. of Alvin Peterson in Supp. of Mot. to Vacate Jud., dated May 19, 2008, ¶¶ 5-6).  In his motion, Peterson contends that Justice Patterson determined in 2005 that Peterson's 1994 conviction was "unconstitutionally obtained." (Id. ¶ 7).

         Even if the Court were to assume that this claim was potentially meritorious, Peterson unquestionably knew of the factual predicate for it by no later than June 30, 2005, when Judge Patterson granted his second petition for a writ of habeas corpus.  (See Ex. N).  He therefore had until June 30, 2006, to assert this claim as part of his Petition.  See 28 U.S.C. § 2244(d)(1)(D) (requiring claim to be filed within one year from "the date on which the factual predicate of the claim . . . could have been discovered through the exercise of due diligence").  Although Peterson filed his Petition on March 27, 2006, he has never sought to raise this additional claim in this proceeding.  Moreover, the one-year statute of limitations expired before he raised this claim in his Section 440.10 motion.  The claim therefore would be time-barred even if it were to be exhausted.

requests for an extension of time for filing objections must be directed to Judge Pauley.

The failure to file timely objections will result in a waiver of those objections for

purposes of appeal.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas

v. Arn, 474 U.S. 140 (1985); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992).

Dated:      New York, New York
            November 21, 2008

                                                    FRANK MAAS
                                          United States Magistrate Judge

Copies to:

Alvin Peterson
349-08-16531
Anna M. Kross Center
18-18 Hazen Street,
East Elmhurst, New York 11370

Leilani Rodriguez, Esq.
Assistant Attorney General
120 Broadway
New York, New York  10271-0332